UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 2005-10864JLT

| | |
|---|---|
| RENATO SOUTO and OTHERS SIMILARLY SITUATED, | ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) ) |
| SOVEREIGN REALTY ASSOCIATES, LTD. And STUART ROFFMAN, As president of the General Partner of Sovereign Realty Associates, Ltd., Sovereign Realty Associates G.P., Inc. and Individually, | ) ) ) ) ) ) |
| **Defendants** | ) ) |

## DEFENDANTS' MOTION TO DISMISS ACTION AND FOR COSTS

Defendants move, pursuant to Fed. R. Civ. P. **37** (**d**), and (**b**) (**2**) (**C**), to dismiss the action and order Plaintiff or his attorney to pay counsel fees in connection with resumed deposition of Plaintiff or grant any other appropriate relief. The facts upon which this motion is based are set forth in the Affidavit filed herewith. The law will be expounded in the remainder of this motion.

Fed. R. Civ. P. **37** (**d**) provides: "If a party **. . .** fails **. . .** to appear before the officer who is to take the deposition, after being served with proper notice **. . .**, the court in which the action is pending on motion may make such orders in regards to the failure as are just, and among other things it may take any action authorized under subparagraph (**A**), (**B**) (**C**) of subdivision (**b**) (**2**) of this rule." The orders contemplated by **A**, **B**, and **C** are as follows:

>   (**A**) An order that the matters regarding which the order
>   was made or any other designated facts shall be taken
>   to be established for the purposes of the action in accordance
>   with the claim of the party obtaining the order;
>
>   (**B**) An order refusing to allow the disobedient party to
>   support or oppose designated claims or defenses, or
>   prohibiting that party from introducing designated matters
>   in evidence;
>
>   (**C**) An order striking out pleadings or parts thereof, or
>   staying further proceedings until the order is obeyed,
>   or dismissing the action or proceeding or any part thereof,
>   or rendering a judgment by default against the disobedient party;

The deposition of Plaintiff was initially taken on **December 20th 2005**. Plaintiff was supposed to produce for that deposition, copies of his tax returns with W-2's and 1099's. He did produce those returns but without the attachments. We shall have occasion to consider those returns later in this motion. In any event on December 20th 2005, without objection, the attorney taking Plaintiff's deposition (not the undersigned) suspended. A copy of the relevant pages of Plaintiff's December 20th 2005 transcript is already before this Court as an exhibit to **"**Defendants' Motion to Dismiss Complaint for Fraud on the Court an Emergency Motion to Stay Discovery Pending Decision on This Motion.**"**

By agreement between counsel, the second (and presumably last) session of Plaintiff's deposition was scheduled for February **24th** 2006. (See Joint Motion for Extension of Time to Complete Discovery, a copy of which is annexed to the Affidavit in support of the present motion.**[1]**) At that time, the deposition of Lee Torrey, whom Defendants agreed to make available for deposition without service of a subpoena, was

---

[1] The motion to extend discovery, allowed by the court, extended the close of discovery from February 28th 2006 to March 31st 2006.

scheduled for February 17th 2006.  However, Mr. Torrey was ill on February 16th 2006, and by agreement of counsel his deposition was rescheduled to February 24th, the date on which Plaintiff's continued deposition would have been taken.  Counsel tentatively agreed to reschedule the continued deposition of Plaintiff to February 27th 2006, but when it turned out that Defendants' counsel was due at a hearing before the Division of Administrative Law Appeals on that date, he requested that it be moved to February 28th 2006.  He was then told that Plaintiff was unavailable on that date with no reason given for his unavailability.[2]

In any event, Plaintiff's attorneys were fully aware that a second session of their client's deposition was necessary and that that deposition would have to take place before March 31st 2006.  The matter was discussed on February 24th 2006.  On March 9th 2006 and again on March 13th 2006, Defendants' counsel sent a letter to Plaintiff's counsel by fax reminding them of the obligation to produce Plaintiff for his second session of his deposition.  The second letter expressed the hope that a Rule 37 motion would not be necessary and resulted in a phone conversation between counsel and an agreement that March **23rd** 2006 was a convenient date for them to resume Plaintiff's deposition.  The agreement was confirmed in writing.

---

[2] Defendants' counsel does not believe and never has believed that Plaintiff was unavailable to be deposed February 28th 2006. He surmises that his supposed unavailability on that date was nothing more than a pretext to obtain Defendants' assent to a motion to extend the time for completing discovery, which the Court had set as February 28th 2006. Defendants' counsel believes that such an extension was sought because Barbara Fitzgerald, whom Plaintiff wanted to depose but on whom Plaintiff was unable to make the personal service required by Rule 45, could not be served and deposed by February 28th.

On March 22nd 2006 at approximately 11:40 in the morning, Attorney Kristen Hurley, one of the Plaintiff's attorneys, called Defendants' attorney and requested a continuance of the date of Plaintiff's resumed deposition because (she said) she and Mr. Gordon had been unable to reach Plaintiff by telephone and he had not responded to their phone calls. Defendants' attorney did not agree to the continuance. Later that day, Plaintiff's counsel faxed a letter to Defendant's counsel making the same request. A copy of the letter is attached to the Affidavit supporting this motion as is the reply faxed by Defendants' attorney to Plaintiff's attorney. On March 23rd 2006 at 10:30 A.M., a stenographer was present, but neither Plaintiff nor his attorneys showed up.

We are bold to suggest that both Plaintiff and his attorneys have acted in utter disregard of their discovery obligations. It was the duty of Plaintiff's attorneys to put their client on notice that his resumed deposition would have to be taken in March of 2006 since discovery would end on March 31st 2006. Such notice would have given him the opportunity to cancel any plans that he might have had – although we strongly doubt that he had any - to absent himself from the Commonwealth for this month. His attorneys had every opportunity to contact him not only at home but also at work. (At the first session of deposition he stated that he was employed by the Home Depot in Everett, Massachusetts. We may assume that Home Depot has a telephone.) Lest, however, it appears that we are guilty of overwhelming naiveté, we shall put on the record what we surmise: Unless Plaintiff has for some reason gone into hiding, he was not unavailable to his attorneys for eight days. But whether this surmise is or is not grounded in fact, it is to be inferred from the facts that Plaintiff or Plaintiff's counsel or both of them have been

sedulously avoiding appearing for a second deposition session and that their behavior is willful or at least reckless. It makes no difference that the resumed date was by agreement rather than by formal notice, for the court will treat them identically. 8A Wright, Miller, Marcus, Federal Practice and Procedure (2005 pocket part) §**2291**, page 126 citing *Precisionflow Technologies Inc., v. CVD Equipment Corp.*, 140 F. Supp. 2nd 195 (2001).

Defendants now seek dismissal as sanction. Since the standard for imposing the sanction on a party is that of informed discretion, we point out that this case is almost certainly headed for dismissal. Defendants have already moved to dismiss and strike the class action aspect of the case and for judgment on the pleadings with respect to the entire remaining claims except for the claim founded on Mass. G.L.c. **149**, §**150**. Plaintiff has filed oppositions to both motions, but these oppositions lack substance.[3]

However, the sum and substance of Plaintiff's claim under Mass. G.L.c. **149**, §**150**, the only claim that Defendants have not moved to dismiss as deficiently pled, is that Defendants agreed to pay Plaintiff fifteen dollars and fifty-three cents (**$15.53**) per hour. It is undisputed that for at least the last four years of his employment Plaintiff was paid ten dollars (**$10.00**) per hour and was also reimbursed for certain expenses. That Plaintiff waited almost three years to sue on that claim, even though, as to the last three months of his employment, it was brought within the time allowed by §**150**, is a pretty good indication of its weakness. See *Emerson v. Lowell Gas Light Co.,* 3 Allen (85

---

[3] *Perhaps* the nadir of Plaintiff's opposition to Defendants' motion for judgment on the pleadings is his *ipse dixit* that he can prove willfulness and thus avoid the time bar of 29 U.S.C. §255 even though he has not pled it. Federal precedent is to the contrary: *Schroeder v. Dayton-Hudson Corp.,* 448 F. Supp. 910, 913 (E.D. Mich 1977).

Mass.) 410, 418 (1862). But the reality is that there was no contract. At pp. 78-82 of the December 20th session of Plaintiff's deposition, we find the following colloquy:

> **Q.** After you received the $10 an hour, you never again discussed a wage increase with Mr. Roffman, correct?
> **A.** Yes, I did.
> **Q.** When is that?
> **A.** In 2000 I ask for more money. He said no.
> **Q.** He told you no, I'm not going to give you anymore money?
> **A.** No.
> **Q.** Did he say anything else?
> **A.** He just said no,
> **Q.** What did you say in 2000 about wanting an increase from $10 an hour?
> **A.** Because I was working a lot doing specific job that should make more money than $10 an hour,
> **Q.** Do you understand in this lawsuit that you are demanding payment at a rate of $15.53 an hour?
> **A.** Yes, I do know,
> **Q.** If you never had any conversation or any agreement with Mr. Roffman for that amount, how can you claim that you are entitled to that amount?
> **A.** Because it's in the papers. It's in the papers that a guy like me with my skills have to make $15.73 an hour.
> **Q.** He told you no, right?
> **A.** He told me no. He saw the paper and he told me no, I'm not going to pay this, right there (Indicating) at his office.
> **Q.** He never—
> **A.** In front of him. He said, I'll keep you at $10.
> **Q.** Mr. Roffman never agreed to pay you $15.53 an hour?
>      **MS. HURLEY**: I'm going to object to that. You are leading.
> **A.** It's in the paper,

- 6 -

| | |
|---|---|
| Q. | No one at Sovereign said that they would pay you" |
| | MS. HURLEY: I'm going to object to that. Ask a question. |
| | MS. ROBERTS: I'm asking the question if you will let me, |
| Q. | No one at Sovereign agreed to pay you $15.53 an hour; isn't that correct? |
| A. | No, nobody pay me, Nobody told me that he's going to pay me. They are going to say the paper say 15.73, but I'm not going to pay you. I'm going to pay you $10 an hour, |
| Q. | They never agreed to pay you 15.53 an hour? |
| A. | Not verbally. |
| Q. | In fact they told you no, they are not going to give you an increase? |
| A. | No. Stuart Roffman told me so. . . . . . . . . . . . . . . . . . . . |
| Q. | Mr. Souto, isn't it fair to say that you asked for an increase and it was denied by Mr. Roffman? |
| A. | Yes, |
| Q. | Thank you. |
| A. | It was on the paper to say Renato, as a maintenance and with my skills, his salary is $15.73. Does that answer your question? |
| Q. | No. He told you he wouldn't pay you more than $10 an hour, didn't he? |
| A. | He told me. |

At pages 82-83 of his deposition, Plaintiff again affirms that the only basis for his allegations that he was entitled to earn fifteen dollars and fifty-three cents (**$15.53**) per hour was his green card application stating that this was the amount that he was earning. At p. 83, he goes even further and says that Mr. Roffman told him that the application notwithstanding, he would still be paid ten dollars (**$10.00**) per hour.[4] Mr. Roffman for

---

[4] We again point out that the transcript of Plaintiff's deposition is before this court as **Exhibit C** to Defendant's Emergency Motion.

his part denies ever having seen the papers in question. Depo tr. 104-108, **Exs. 1-2**, which were prepared by Plaintiff's immigration attorney, John Dvorak.

Suppose, however, Defendants had, in order to help Plaintiff become a permanent resident, assured the Immigration and Naturalization Service **(INS)** that Plaintiff was earning fifteen dollars and fifty-three cents (**$15.53**) per hour while telling Plaintiff that he would only earn ten dollars (**$10.00**) per hour and refusing to pay him any more than that?

Massachusetts law is perfectly straightforward with respect to determining the presence *vel non* of a contract. To quote from *Situation Management Systems, Inc., v. Malouf, Inc.,* 430 Mass. 875, 878, 724 N.E. 2d 699 (2001),

> It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.

By this standard Plaintiff had no agreement with Defendant Sovereign to pay him any more than ten dollars (**$10.00**) per hour. There was, a fortiori, no intention to be bound by any such agreement. According to Plaintiff's sworn testimony, not only did Defendants not agree to pay Plaintiff more than ten dollars (**$10.00)** per hour; they explicitly refused to do so. Plaintiff, therefore, has no hope of recovering under Mass. G.L.c. **149**, **§150** or any common law theory that depends a promise to pay him more than ten dollars (**$10.00)** per hour because *on his testimony* there was no such promise.

Nor is this all. Plaintiffs testified at his deposition to stealing documents from Defendants' fax machines, **Tr. 95-97.** See Mr. Roffman's depo., **Tr. 135-136.** Under Massachusetts laws, a dishonest employee "forfeits the right to retain or receive

- 8 -

compensation for conduct in violation of his fiduciary duties." ***Chelsea Industries, Inc.***, ***Gaffney,*** 389 Mass. 1, 12, 449 N.E. 2e 320 (1983). Theft is *per se* a basis for denying compensation. ***Raymond v. Davies***, 293 Mass. 117, 120, 199 N.E. 321 (1936). Even if Plaintiff had had an agreement with Defendant Sovereign, he would still not be entitled to compensation; thus, his **§150** claim is worthless.

The numerous instances of Plaintiff's outright mendacity were cataloged in defendant's Emergency Motion to Dismiss, heard on January 30th 2006, and denied by the court. We, of course, for purposes of the present motion, accept the court's ruling that these numerous outright lies by Plaintiff did not constitute a sufficient fraud upon the court to warrant dismissal. They are, however, a fact to be considered in determining what sanction the court should impose upon Plaintiff for failure to show up for a session of his deposition. But there are other instances in which Plaintiff at his December deposition plainly refused to engage in meaningful discovery. To cover the fact that he filed fraudulent income tax returns, as late as November 2005 no less, Plaintiff repeatedly denied any knowledge of his wife's income in the years 1999 through 2002, denied knowing what she did for a living and denied even knowing the color of her car. **See Tr.** 30, 31, 37, 38, 150, 151, 152, 153, 155, 156, 158 and 160. Plaintiff claimed not to understand why all of his tax returns were dated November 14th 2005.[5] **Tr.** 40. At page **84** after answering questions in English with apparent comprehension for 83 pages, Plaintiff claimed not to understand "written" and "writing" meant. At pages 126-127 Plaintiff could not remember whether he was paid for vacation even though the claim that

---

[5] The reason, though, is fairly obvious. Until eight months after he began the presentation, Plaintiff never filed returns.

he had not been paid was one of the bases upon which this action was brought. At pages 142- 143, he demonstrated the same lapse of memory with respect to a Christmas bonus supposedly denied him. At pages 164-165, Plaintiff stated that he had no memory of which weeks he had worked overtime or had not been paid the salary that was promised him. Since Plaintiff last worked for Sovereign on July 2nd 2002, and since the complaint in this action was not filed until April 7th 2005, Plaintiff's lack of memory and the absence of any record would clearly disqualify him from discovery. See ***Quinones v. Buick*** 436 F.3rd 284, 290-291 (1st Cir.2006) (inability to provided specific numbers crimination claim leaves claim to vague to permit imposition damages).

Plaintiff's failure to show up for his deposition on March22nd 2006 is not an isolated instance of misconduct during discovery. It follows a pattern of evasionness, sullenness and outright mendacity. The appropriate remedy is dismissal.

By Defendant's attorney,

_____
 /s/David Berman
**David Berman**
100 George P. Hassett Drive
Medford, Massachusetts 02155
BBO No. 040060
Tel. No (781) 395-7520

*Dated: March 27th 2006*

Roffman:Souto-Def. Motion to Dismiss 3/24/06

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**Civil Action No. 2005-10864JLT**

| | |
|---|---|
| RENATO SOUTO and OTHERS SIMILARLY SITUATED, ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> SOVEREIGN REALTY ASSOCIATES, LTD. ) <br> And STUART ROFFMAN, As president of the ) <br> General Partner of Sovereign Realty Associates, ) <br> Ltd., Sovereign Realty Associates G.P., Inc. and ) <br> Individually, ) <br> **Defendants** ) <br> ) | **CERTIFICATE OF SERVICE** |

I, **David Berman**, certify that on **March 28th 2006**, that I caused a copy of the within **Defendants' Motion to Dismiss Action and For Costs** to be delivered by Electronic Transmission and First-class mail to: **Philip J. Gordon**, Esquire, Gordon and Balikian, LLP, 535 Boylston Street, 6th Floor, Boston, Massachusetts 02116 pgordon@gordonllp.com

*/s/David Berman*
**David Berman**
100 George P. Hassett Drive
Medford, Massachusetts 02155
BBO No. 040060
Tel. No (781) 395-7520

*Dated: March 28th 2006*

Roffman:Souto-Def. Motion to Dismiss 3/24/06

- 11 -

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**Civil Action No. 2005-10864JLT**

|  |  |
|---|---|
| RENATO SOUTO and OTHERS SIMILARLY SITUATED, **Plaintiffs,** v. SOVEREIGN REALTY ASSOCIATES, LTD. and STUART ROFFMAN, As president of the General Partner of Sovereign Realty Associates, Ltd., Sovereign Realty Associates G.P., Inc. and Individually, **Defendants** | **CERTIFICATE OF CONSULTATION** |

    I, **David Berman**, have certified that I have been unable to reach Plaintiff's attorney concerning the within motion which has delayed filing it.  On March 28th 2006, I received a fax from Plaintiff's attorney offering to make Plaintiff available for deposition on March 31st 2006.  This is unacceptable. To be delivered by Electronic Transmission and First-class mail to: **Philip J. Gordon**, Esquire, Gordon and Balikian, LLP, 535 Boylston Street, 6th Floor, Boston, Massachusetts 02116 pgordon@gordonllp.com

    */s/David Berman*
    **David Berman**
    100 George P. Hassett Drive
    Medford, Massachusetts 02155
    BBO No. 040060
    Tel. No (781) 395-7520

*Dated: March 28th 2006*

Roffman: Souto-Def. Motion to Dismiss 3/24/06