UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 2005-10864JLT

| | |
|---|---|
| RENATO SOUTO and OTHERS SIMILARLY SITUATED, **Plaintiffs,** | ) ) ) ) |
| v. | ) ) |
| SOVEREIGN REALTY ASSOCIATES, LTD. And STUART ROFFMAN, as president of the General Partner of Sovereign Realty Associates, Ltd., Sovereign Realty Associates G.P., Inc. and Individually, **Defendants** | ) ) ) ) ) ) ) ) |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Facts

According to the Complaint, on July **3rd** 2002, Plaintiff ceased to be employed by Defendant Sovereign. Through a voluntary dismissal and an Order of this court allowing Defendants' Motion for Judgment on the Pleading under **Fed. R. Civ .12 (c),** the Complaint has been whittled down to a single count based on **Mass. G. L. c.149, §150**, providing a remedy to a person who has not been paid his wages. At his deposition Plaintiff testified that he received ten (**$10.00**) dollars an hour or four hundred (**$400.00**) dollars a week for every week that he worked. He further admits that when he asked Defendant Roffman, Principal of Sovereign Realty to increase his salary, he was refused. He claims, however, that when Mr. Roffman sponsored him for permanent residence in

- 1 -

the United States, Mr. Roffman told the Government that Plaintiff was earning fifteen dollars and fifty-three cents (**$15.53**) per hour. On the basis of this claim, he asserts that there was an agreement between him and Mr. Roffman to pay him that amount.

So that there will be no misunderstanding, Plaintiff took the depositions of Mr. Roffman and Plaintiff's immediate superior, Lee W. Torrey, and both of them testified to never seeing any document indicating that Plaintiff would be paid at the rate of fifteen dollars and fifty-three cents (**$15.53**) per hour. As we shall see, however, even if Mr. Roffman or Mr. Torrey had been aware of this representation made to the Government, that would be insufficient to create a contract.

The original Complaint included counts under the Fair Labor Standards Act and **Mass. G.L. c.151, §20** based on alleged failure to pay overtime. These counts were dismissed as untimely. However, we have reason to believe that Plaintiff will attempt to press these same claims as if made under **G.L. c.149, § 150.**

With respect to overtime, Plaintiff has admitted that he has no records or no memory of any week in which he allegedly worked more than forty hours. Depo. of Plaintiff, pp. 163-165. He has also admitted surreptitiously taking documents from Mr. Roffman's fax machine and making copies of these documents even though he knew that Mr. Roffman would fire him if he were aware of this. Depo. of Plaintiff, 06/30/06, pp. 18-21.

## Argument

**I.     IN THE ABSENCE OF EVIDENCE THAT ANY DEFENDANT OR REPRESENTATIVE OF ANY DEFENDANT EVER AGREED TO A SUBMISSION TO THE GOVERNMENT STATING THAT PLAINTIFF**

**WAS BEING PAID $15.53 PER HOUR (OR WOULD BE PAID THAT), PLAINTIFF HAS FAILED TO CARRY HIS BURDEN OF PROOF.**

"Where the existence of a contract is an issue, the burden is on the Plaintiff to show it was made." *Canney v. New England Telephone & Telegraph Co.*, 353 Mass. 158, 164 N.E. 723 (1967). On the face of the record, neither Mr. Roffman nor Mr. Torrey, the manager under whom Plaintiff worked, ever saw the representation to the Government that the Plaintiff was earning fifteen dollars and fifty-three cents (**$15.53**) per hour. Unless Plaintiff can produce evidence to the contrary, his case is lost even without any need to reach the question of whether there was any contract. Plaintiff is under a duty to produce evidence that a contract was actually made or, at least, that a representation was made.

II. **THERE WAS NEVER ANY AGREEMENT TO PAY PLAINTIFF MORE THAN $10.00 PER HOUR**

The sum and substance of Plaintiff's claim under Mass. G.L. c.**149**, §**150**, is that Defendants agreed to pay Plaintiff fifteen dollars and fifty-three cents (**$15.53**) per hour. It is undisputed that for at least the last four years of his employment Plaintiff was paid ten dollars (**$10.00**) per hour and was also reimbursed for certain expenses. That Plaintiff waited almost three years to sue on that claim, even though, as to the last three months of his employment, it was brought within the time allowed by §**150**, is a pretty good indication of its weakness. See *Emerson v. Lowell Gas Light Co.,* 3 Allen (85 Mass.) 410, 418 (1862).

But the reality is that there was no contract. At pp. 78-82 of the December 20th session of Plaintiff's deposition, we find the following colloquy:

> **Q.** After you received the $10 an hour, you never again discussed a wage increase with Mr. Roffman, correct?
> **A.** Yes, I did.
> **Q.** When is that?
> **A.** In 2000 I ask for more money. He said no.
> **Q.** He told you no, I'm not going to give you anymore money?
> **A.** No.
> **Q.** Did he say anything else?
> **A.** He just said no,
> **Q.** What did you say in 2000 about wanting an increase from $10 an hour?
> **A.** Because I was working a lot doing specific job that should make more money than $10 an hour,
> **Q.** Do you understand in this lawsuit that you are demanding payment at a rate of $15.53 an hour?
> **A.** Yes, I do know,
> **Q.** If you never had any conversation or any agreement with Mr. Roffman for that amount, how can you claim that you are entitled to that amount?
> **A.** Because it's in the papers. It's in the papers that a guy like me with my skills have to make $15.73 an hour.
> **Q.** He told you no, right?
> **A.** He told me no. He saw the paper and he told me no, I'm not going to pay this, right there (Indicating) at his office.
> **Q.** He never—
> **A.** In front of him. He said, I'll keep you at $10.
> **Q.** Mr. Roffman never agreed to pay you $15.53 an hour?
>   **MS. HURLEY**: I'm going to object to that. You are leading.
> **A.** It's in the paper,
> **Q.** No one at Sovereign said that they would pay you"
>   **MS. HURLEY**: I'm going to object to that. Ask a question.

> **MS. ROBERTS**: I'm asking the question if you will let me,
> **Q.** No one at Sovereign agreed to pay you $15.53 an hour; isn't that correct?
> **A.** No, nobody pay me, Nobody told me that he's going to pay me. They are going to say the paper say 15.73, but I'm not going to pay you. I'm going to pay you $10 an hour,
> **Q.** They never agreed to pay you 15.53 an hour?
> **A.** Not verbally.
> **Q.** In fact they told you no, they are not going to give you an increase?
> **A.** No. Stuart Roffman told me so. . . . . . . . .
> . . . . . . . . . . . .
> **Q.** Mr. Souto, isn't it fair to say that you asked for an increase and it was denied by Mr. Roffman?
> **A.** Yes,
> **Q.** Thank you.
> **A.** It was on the paper to say Renato, as a maintenance and with my skills, his salary is $15.73. Does that answer your question?
> **Q.** No. He told you he wouldn't pay you more than $10 an hour, didn't he?
> **A.** He told me.

At pages 82-83 of his deposition, Plaintiff again affirms that the only basis for his allegations that he was entitled to earn fifteen dollars and fifty-three cents **($15.53)** per hour was his green card application stating that this was the amount that he was earning. At p. 83, he goes even further and says that Mr. Roffman told him that the application notwithstanding, he would still be paid ten dollars **($10.00)** per hour**.** Mr. Roffman for his part denies ever having seen the papers in question. Depo tr. 104-108, **Exs. 1-2**, which were prepared by Plaintiff's immigration attorney, John Dvorak.

Suppose, however, Defendants had, in order to help Plaintiff become a permanent resident, told the Immigration and Naturalization Service **(INS)** that Plaintiff was earning

- 5 -

fifteen dollars and fifty-three cents (**$15.53**) per hour while telling Plaintiff that he would only earn ten dollars (**$10.00**) per hour and refusing to pay him any more than that?

Massachusetts law is perfectly straightforward with respect to determining the presence *vel non* of a contract. To quote from ***Situation Management Systems, Inc., v. Malouf, Inc.,*** 430 Mass. 875, 878, 724 N.E. 2d 699 (2001),

> It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.

By this standard Plaintiff had no agreement with Defendant Sovereign to pay him any more than ten dollars (**$10.00**) per hour. There was, *a fortiori*, no intention to be bound by any such agreement. According to Plaintiff's sworn testimony, not only did Defendants not agree to pay Plaintiff more than ten dollars (**$10.00)** per hour; they explicitly refused to do so. Plaintiff, therefore, has no hope of recovering under Mass. G.L. c.**149**, **§150** or any common law theory that depends a promise to pay him more than ten dollars (**$10.00)** per hour because *on his testimony* there was no such promise. And if this was not enough at the second set of his deposition, Plaintiff not only admitted again that he had never been paid more than ten (**$10.00)** dollars an hour, Depo of 06/30/06, p.12, but also that after his discharge when he begged Mr. Roffman to give him his job back he never expected to be paid more. *Id.* 13-14. Thus, not only was there a complete absence of a formal agreement but there was an absence of any reliance of the Plaintiff on what had allegedly been told to the Government. The absence of such reliance is preclusive of a recovery on any contractual theory. ***Rhode Island Hospital Trust National Bank v. Varadan***, 419 Mass. 841, 850, 647 N.E. 2nd 1147 (1995).

### III.     PLAINTIFF CANNOT USE THE PROVISIONS OF MASS. G.L. c.149, §150 TO RECOVER FOR OVERTIME WORK EVEN AT THE RATE OF $10.00 PER HOUR.

Plaintiff's claims for overtime compensation have already been dismissed as untimely. **§1A of Mass. G.L. c.151** states in relevant part:

> Except as otherwise provided in this section, no employer in the commonwealth shall employ any of his employees in an occupation, as defined in section two, for a work week longer that forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed.

On the other hand, c.151, § 20 states in relevant part:

> If any person is paid by an employer less than the minimum fair wage to which such person is entitled under or by virtue of a minimum fair wage regulation, . . . . . .such person may recover in a civil action three times the full amount of such minimum wage less any amount actually paid to him or her by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between such person and the employer to work for less than such wage shall be no defense in such action.

Plaintiff attempted to recover under this statute but could not because his action was not brought within two (**2**) years. **G. L. c.151, §20A**.   There is no doubt that had his action under **FLSA** or **§20** been timely, Plaintiff's recovery (if any) under **§20** would have been his overtime work at the regular rate plus time and a half.  He would not have been relegated to recovering his regular rate under **Mass. G.L. c.149, §150** and his over time under **c.151, §20**.

The issue then becomes whether Plaintiff may, as a matter of law, even if he had appropriate evidence, use **§149** as a vehicle for recovering ten (**$10.00**) dollars an hour for overtime allegedly worked.   We believe that he may not.  For one thing, chapter 151

is a comprehensive statute dealing with minimum wages and overtime pay. That fact in itself would cast doubt on whether any other statute was intended to cover the same ground. *Malden v. Flynn*, 318 Mass. 276, 278, 61 N.E. 107 (1945), holds that where one statute conferred very broad powers of regulation over nuisances upon a Board of Health but other statutes apply to the collection and transportation of garbage, the Board could not act under its broad regulatory power but was required to act under its specific power pertaining to the collection of garbage.

In the present case, our submission that **Mass. G.L. c.149, §150** may not be used to collect for allegedly unpaid overtime is confirmed by the very language of **§150**, which states in part:

> Any employee claiming to be aggrieved by a violation of section 148, 148A, 148B, 150C, 152, 152A or 159C or section 19 of chapter 151 may, at the expiration of ninety days after the filing of a complaint with the attorney general, or sooner, if the attorney general assents in writing, and within three years of such violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits.

One aspect of this statute that leaps out in a case like this is that there is a provision **G.L. c.151** that is actionable under **§150**, and that is **c.151, §19.** However **§19** is utterly irrelevant to this case. It deals entirely with the minimum wage; its closest provision is paragraph (**2**), which, however, deals only with failure to pay minimum wage established by the Commissioner. Plaintiff makes no claim that he was paid below the minimum wage. If other provisions of Chapter **151** were to be included with in the scope of recovery under **§150**, it is unthinkable that the legislature would of failed to mention them. Moreover, there is nothing in the sections that are mentioned that pertain to the failure to pay overtime. Besides, Massachusetts courts have repeatedly held that the

purpose of **G.L. c.149, §§148-150**, is to prevent the unreasonable detention of wages. *Boston Police Patrolmen's Association Inc. v. Boston*, 435 Mass. 718, 720, 761, 2nd 479 (2002) and case cited. *Newton v. Commissioner of Youth Services*, 62 Mass.App.Ct. 343, 346, 816 2nd N.E. 993 (2004). No detention of wages is alleged in the complaint.

IV. **IN ANY EVENT, WHERE PLAINTIFF IS UNABLE TO STATE WHEN THE WORKED OVERTIME, HE CAN NOT RECOVER FOR THAT OVERTIME.**

In *George Lawley & Son Corporation v. South*, 140 F.2nd 439, 441 (1st Cir. 1944), the court held:

> Counsel for the defendant contends, and counsel for the plaintiff appears to concede, that in cases of this sort the plaintiff not only has the burden of persuasion as to the number of hours of overtime worked each week and the amount of wages due each pay period, but that to prevail he must also establish the hours of his overtime definitely and with certainty. We agree to the first clause, and taking the last clause to mean no more than that the plaintiff must produce evidence definite enough to permit a finding without resort to guess or conjecture that he worked some particular number of overtime hours, we agree to that also.

Since this ruling was reached under the Fair Labor Standards Act, Massachusetts would not be required to follow it. However, Massachusetts has indicated that with respect to actions to recover for overtime, it is prepared to follow Federal precedent. *Goodrow v. Lane Bryant Inc.*, 432 Mass. 165, 170, 732 N.E.2nd 289 (2000). On top of that, Massachusetts generally follows the Rule that damages may not be left to conjecture and surmise. As the First Circuit noted in *Damon v. Sun Company, Inc*., 87 F.3rd 1467, 1472 (1996):

> Damages, in turn, must be proven "with a fair degree of certainty." *Pearl v. William Filene's Sons Co*., 317 Mass 529, 58 N.E. 2nd 825, 827 (1945);

- 9 -

> *see* ***Squeri v. McCarrick***, 32 Mass. App. Ct. 203, 588 N.E. 2d 22, 26 (1992) ("While proof of damages does not require mathematical precision it must be based on more than mere speculation.")

See also ***Valerio v. Putnam Assoc. Inc.***, 173 F.3rd 35, 40 (1st Cir.1999).

It should be noted that if Plaintiff were entitled to any overtime damages, the three year limitation found in **G. L. c.149, §150** would cut off his right to those except for the brief period between April 5th 2002 and his last day of work on July 3rd 2002. In the circumstances, it is hardly unreasonable to expect that where he claims to have worked overtime in that period, he provide the basis upon which damages could be assessed.

**V.    IN ANY EVENT, THE RECORD CONCLUSIVELY ESTABLISHES THAT PLAINTIFF AGREED TO WORK FOR $400.00 PER WEEK FOR WHATEVER TIME HE ACTUALLY WORKED.**

We return to the fact that over a period of several years Plaintiff, without complaint and without ever suggesting a mistake, received a check for four hundred ($400.00) every week plus certain expenses. This included payment for a lunch break of one half hour. Although there appears to be no Massachusetts case on point, the First Circuit, in ***Valerio v. Putnam Assoc. Inc***., 173 F. 3rd, 35, 40 (1999), held unequivocally that an employee who agrees to work a fluctuating number of hours per week and receive a fixed weekly salary will not be heard to complain under Mass. G.L.c.151 about the failure to pay overtime. At least in the absence of any supervening Massachusetts authority, ***Valerio*** is, of course, binding upon this court as to the Massachusetts law.

## VI. PLAINTIFFS' ADMITTED THEFT OF DOCUMENTS FROM DEFENDANTS' FAX MACHINE DISQUALIFIES HIM FOR ANY FURTHER COMPENSATION.

Plaintiffs testified at both sessions of his deposition to stealing documents from Defendants' fax machine, **Depo. of 12/20/05, Tr. 95-97; Depo. of 6/30/06, p.17.** See Mr. Roffman's Depo., **Tr. 135-136.** Plaintiff understood that if Mr. Roffman had found out that he was surreptitiously monitoring the fax machine, he would have fired him. **Depo. of 6/30/06, p.19**. Under Massachusetts laws, a dishonest employee "forfeits the right to retain or receive compensation for conduct in violation of his fiduciary duties." ***Chelsea Industries, Inc.***, ***Gaffney,*** 389 Mass. 1, 12, 449 N.E. 2e 320 (1983). Theft is *per se* a basis for denying compensation. ***Raymond v. Davies***, 293 Mass. 117, 120, 199 N.E. 321 (1936). Even if Plaintiff had had an agreement with Defendant Sovereign, he would still not be entitled to compensation; thus, his **§150** claim is worthless.

## Conclusion

For the reasons given, Defendants' Motion for Summary Judgment should be allowed.

By Defendants' attorney

/S/ David Berman

---
David Berman
100 George P. Hassett Drive
Medford, Massachusetts 02155
BBO No. 040060
Tel. No (781) 395-7520

*Dated: September 21st 2006*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 2005-10864JLT

| | |
|---|---|
| RENATO SOUTO and OTHERS SIMILARLY SITUATED, **Plaintiffs,** v. SOVEREIGN REALTY ASSOCIATES, LTD. And STUART ROFFMAN, As president of the General Partner of Sovereign Realty Associates, Ltd., Sovereign Realty Associates G.P., Inc. and Individually, **Defendants** | ) ) ) ) ) ) ) ) ) ) ) ) ) |

CERTIFICATE
OF
SERVICE

I, David Berman, certify that on **September 21st 2006**, that I caused a copy of the within **Brief in Support of Motion for Judgment on the Pleadings** to be delivered by Electronic Transmission and First-class mail to: **Philip J. Gordon**, Esquire, Gordon and Balikian, LLP, 535 Boylston Street, 6th Floor, Boston, Massachusetts 02116 pgordon@gordonllp.com

/s/David Berman
David Berman
100 George P. Hassett Drive
Medford, Massachusetts 02155
BBO No. 040060
Tel. No (781) 395-7520

*Dated: September 21, 2006*

*Roffman-Souto-09/14/06.(#06).Brief. Summary Judgment*

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

**Civil Action No. 2005-10864JLT**

| | |
|---|---|
| RENATO SOUTO and OTHERS SIMILARLY SITUATED,<br>**Plaintiffs,**<br><br>v.<br><br>SOVEREIGN REALTY ASSOCIATES, LTD. and STUART ROFFMAN, As president of the General Partner of Sovereign Realty Associates, Ltd., Sovereign Realty Associates G.P., Inc. and Individually,<br>**Defendants** | **CERTIFICATE OF CONSULTATION** |

I, David Berman, have certified that I have conferred with Plaintiff's attorney concerning the within motion but have not succeeded in narrowing the issues raised by it. To be delivered by Electronic Transmission and First-class mail to: **Philip J. Gordon**, Esquire, Gordon and Balikian, LLP, 535 Boylston Street, 6th Floor, Boston, Massachusetts 02116 pgordon@gordonllp.com

/s/David Berman
**David Berman**
100 George P. Hassett Drive
Medford, Massachusetts 02155
BBO No. 040060
Tel. No (781) 395-7520

*Dated: September 21, 2006*

*Roffman-Souto-09/14/06.(#06).Brief. Summary Judgment*